1  STEVEN T. JAFFE, ESQ.
   Nevada Bar No. 7035
2  sjaffe@lawhjc.com
   MICHELLE R. SCHWARZ, ESQ.
3  Nevada Bar No. 5127
   mschwarz@lawhjc.com
4

5  **HALL JAFFE & CLAYTON, LLP**
   7425 Peak Drive
6  Las Vegas, Nevada 89128
   (702) 316-4111
7  Fax (702) 316-4114

8  *Counsel for Defendant*
   *Jacobs Entertainment, Inc*
9

10                **UNITED STATES DISTRICT COURT**

11                     **DISTRICT OF NEVADA**

| | |
|---|---|
| JANE DOE, a minor by and through her natural parent, GRACE DOE, | CASE NO.: 3:18-cv-428-LRH-WGC |
| Plaintiff, | **DEFENDANT JACOBS ENTERTAINMENT, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | **(Fed. R. Civ. P. 56)** |
| CARSON CITY, a consolidated municipality and a political subdivision of the State of Nevada; JAYE PHILLIPS, individually; JACOBS ENTERTAINMENT, INC., a foreign corporation, | *[ORAL ARGUMENT REQUESTED]* |
| Defendants. | |

       COMES NOW Defendant JACOBS ENTERTAINMENT, INC. (hereinafter "Jacobs" or "Jacobs Entertainment"), by and through its counsel of record, STEVEN T. JAFFE, ESQ., and MICHELLE R. SCHWARZ, ESQ., of the law firm HALL JAFFE & CLAYTON, LLP, and respectfully moves this Court for an order pursuant to Fed. R. Civ. P. 56 granting summary judgment in its favor and dismissing Plaintiff's claim for negligence and punitive damages, with prejudice, because Plaintiff cannot establish that Jacobs Entertainment is liable for the unforeseeable criminal conduct in the form of sexual abuse of a child by a third-party.

/ / /

1

This Motion is made and based on Fed. R. Civ. P. 56, the following Memorandum of Points and Authorities, all papers and pleadings on file herein, the attached affidavits, and such arguments of Counsel as the Court may entertain at the time of hearing.

DATED this 6th day of November 2019.

HALL JAFFE & CLAYTON, LLP

By: /s/ Steven T. Jaffe
   STEVEN T. JAFFE, ESQ.
   Nevada Bar No. 7035
   MICHELLE R. SCHWARZ, ESQ.
   Nevada Bar No. 5127
   7425 Peak Drive
   Las Vegas, Nevada 89128
Counsel for Defendant,
JACOBS ENTERTAINMENT, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Jacobs now moves for summary judgment, because the conduct of a recreation camp counselor sexually abusing a young girl was wholly unforeseeable to Jacobs, which owned the bowling alley where the abuse occurred. More specifically, this case involves claims that a young girl was sexually abused by a volunteer recreation camp counselor, K.H.[1], while she was a "Wagoneer" with Kamp Carson ("Kamp Carson"), of the Carson City Parks and Recreations summer camp program. Plaintiff joined Jacobs Entertainment, because one of the incidents of sexual abuse surreptitiously occurred while the Wagoneers were on an afternoon field trip to the bowling alley at the Gold Dust West Carson City ("GDWCC"). There is no evidence to support liability against Jacobs Entertainment in this case, because opponents to this Motion can demonstrate no similar prior incidents that could have made this criminal conduct foreseeable, and thus allow liability to exist against a proprietor of a business open to the public.

This motion does not address any issues involving damages, conduct that happened off property owned by Jacobs Entertainment, or the actions and omissions of the other defendants. While this is undeniably a tragic incident, that tragedy must not give way to unfettered liability. Plaintiff cannot meet the burden of presenting admissible evidence that this particular criminal conduct was foreseeable at this particular location, which is required to defeat this motion. Under Nevada law, Plaintiff must offer some evidence of the existence of prior similar incidents, which would make the sexual assault reasonably foreseeable, based on the totality of the circumstances. Because there is no such evidence, Plaintiff's claim against Jacobs Entertainment must be dismissed.

## II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Jacobs is entitled to summary judgment under **Fed. R. Civ. P. 56**, since "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[1] The perpetrator in this case was also underage and is therefore referred to by his initials, consistent with the complaint.

3

entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**. One of the principal purposes of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 US. 317, 323-24 (1986).

Where the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* Once the moving party meets its burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *See Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Opponents to this motion must demonstrate a material issue of fact, or one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The opponents to this motion cannot rely solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The opponents to this motion must present admissible evidence that shows there is a genuine dispute. *See Celotex*, 477 U.S. at 324. While the opponents to this motion are entitled to reasonable inferences, if the claims are merely colorable or not sufficiently probative, summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.     UNDISPUTED FACTS

There is no dispute Plaintiff was sexually abused by K.H. on July 21, 2016, while she was attending a Kamp Carson Wagoneer's field trip to the bowling alley at the GDWCC. The abuse happened in the bowling area, as well as outside the restrooms in the bowling alley. The criminal conduct of K.H. was captured on surveillance video which was provided by Jacobs Entertainment at the request of law enforcement when it was investigating abuse against other children that happened at Kamp Carson. It is through this video that K.H.'s abuse of Plaintiff was uncovered. **Exhibit 1** (Olson Depo. 18:25-19:12; 20:6-9; 33:4-15; 34:21-35:25).

4

The GDWCC fully cooperated with the investigation by the Carson City Sherriff's Office. **Exhibit 1** (Olson Depo. 33:4-15; 34:21-35:25; 36:12-17; 73:9-11). This video evidence has been invaluable in stopping further incidents of abuse by K.H. and supporting Plaintiff's claims against Carson City Parks and Recreations. Unlike Carson City Parks and Recreations, GDWCC had no relationship with either K.H. or Plaintiff. It was simply a business open to the public.

### A. There is no evidence of any prior similar incidents of crimes against children or sexual abuse of children at this particular location.

As part of Plaintiff's discovery efforts in this matter, Plaintiff subpoenaed records from the Carson City Sherriff's Office for "all documents and records generated as a result of a call for service directed to the GDWCC from June 1, 2012—August 3, 2016". **Exhibit 2**. That request generated a response that included 28 different reports:

1. Eleven (11) incidents of petit larceny, either involving a stolen wallet, purse, or cell phone;
2. Four (4) incidents of domestic abuse by an adult, largely involving money;
3. Four (4) incidents of burglary of a vehicle, with various items stolen;
4. Three (3) incidents of grand larceny, involving either a stolen pallet jack, cell phone, or a dog;
5. Two (2) incidents of battery involving a dispute between adult patrons;
6. One (1) incident involving an assault on a police officer, which started as a traffic stop off property;
7. One (1) incident of burglary involving stolen electronics;
8. One (1) incident of grand theft auto;
9. One (1) incident of credit card fraud;

**Exhibit 2**. There are no reports even remotely involving sexual abuse or any crimes against children. The only incident that even involved a child, which happened on September 25, 2015 (#15-6266), was about a woman who had left her child in the parking lot and then got into a dispute with one of the other patrons who found the child. **Exhibit 2** at P002124-

5

002126.  Words were had, and the mother slapped the other woman, who impugned her skills as a mother.  The child had fallen down but was otherwise uninjured.

In addition to the police reports, Jacobs Entertainment produced its own incident reports for the GDWCC going back to 2011. **Exhibit 3**.  These reports reveal no prior incidents of sexual abuse or any crimes involving children.  The reports include domestic abuse involving adults, a homeless person who needed medical attention, the child in the parking lot discussed above, and various petty crimes, none of which involved children or sexual abuse.  **Exhibit 3**.

This is truly a unique and horribly tragic event.  Both the law enforcement officers investigating this crime testified that it was entirely out of the ordinary.  The detective who investigated this incident for the Carson City Sheriff's Office, Det. Steven Olson, testified that in his experience investigating more than 50 cases of child sexual abuse in Carson City, this type of incident—involving sexual abuse of a child in daytime at a public place in a public area—was unexpected and unforeseeable. **Exhibit 1** (Olson Depo. 70:21-73:5).  Det. Olson testified that in his experience, child sexual abuse cases generally involved conduct that occur behind closed doors. **Exhibit 1** (Olson Depo. 71:11-14).  Det. Olson testified that it was very uncommon and rare for sexual abuse of a child to be done in open in a public place. **Exhibit 1** (Olson Depo. 71:15-17).  To the best of his knowledge, no sexual abuse of a child—either in private or in public—had occurred at the GDWCC. **Exhibit 1** (Olson Depo. 71:18-24).  Such an occurrence was in fact so rare, that he had never heard of any other cases of such brazen and public sexual abuse of a child to have occurred *anywhere* in Carson City. **Exhibit 1** (Olson Depo. 71:25-72:5).  Based on his experience, an incident such as this was entirely unexpected and unforeseeable. **Exhibit 1** (Olson Depo. 72:20-73:5).

In addition to Det. Olson, Sergeant Salvador Acosta, who investigated the failure to report this incident by Kamp Carson personnel and who had investigated more than a hundred other cases of child sexual abuse during his career, similarly testified that such an incident was unexpected and the first of a kind in his experience. **Exhibit 4** (Acosta Depo. 73:24-76:16).  Sgt. Acosta testified that of the many cases he had investigated, none had occurred at the GDWCC and were generally not in public, but instead behind closed doors.  **Exhibit 4** (Acosta

Depo. 75:3-15; 75:23-76:16).   In fact, this was the only case he had ever investigated involving abuse happening in a public place while the child was enrolled in a summer camp-like program. **Exhibit 4** (Acosta Depo. 76:3-10).  Even anecdotally, he did not even know of any other similar cases and that this was "the first time I've heard [of child sexual abuse] at the Gold Dust West." **Exhibit 4** (Acosta Depo. 76:11-16).  Sgt. Acosta believed the incident was not foreseeable and was instead "unexpected." **Exhibit 4** (Acosta Depo. 77:15-23).

### B. Kamp Carson was not relying on the security of the GDWCC to supervise the children.

Plaintiff can offer no evidence that the Carson City recreation program explicitly operated in reliance on the GDWCC to provide security for the campers.  As part of the summer camp program with Kamp Carson, the children in the Wagoneer's program went on at least two different field trips each week. **Exhibit 5** (Phillips Depo. 67:17-22).  The children were taken on both local and non-local field trips by the Kamp Carson staff to places such as bowling alleys (not just ones in casinos), jumping areas, movie theaters, parks, swimming pools, Lake Tahoe, the children's museum, and batting cages.  **Exhibit 5** (Phillips Depo. 67:25-68:6; 109:4-11; 131:7-132:2; 134:23-135:6; 142:25-143:1).

Jaye Phillips, the Kamp Carson supervisor and a co-defendant in this matter, testified that the three factors he used in deciding on this particular field trip to the bowling alley at the GDWCC was (1) location (it was a "straight shot" from the community center); (2) history of previous field trips ("it was a known entity"); and (3) pricing. **Exhibit 5** (Phillips Depo. 109:20-21; 136:7; 142:1-6).  Although Mr. Phillips knew there was security, almost all the other places they would take children to for these field trips did not have any security and it was not raised by him unprompted as a reason for the choice. **Exhibit 5** (Phillips Depo. 142:13-143:10; 145:23-146:5).

Mr. Phillips had personally been on field trips to the GDWCC on multiple prior occasions; and, he neither formed any opinion that he had any concern about insufficient security at the establishment, nor had he anyone expressed any concerns to him. **Exhibit 5** (Phillips Depo. 138:11-25; 139:8-17).  Plaintiff's mother even signed a field trip permission

7

1   slip. **Exhibit 6** (Grace Doe Depo. 128:2-3).  The Kamp Carson program had been to the
2   GDWCC for similar field trips more than ten (10) times before this incident, without any
3   complaints, much less incidents of sexual abuse of campers which would have placed any
4   defense interest on notice for the future. **Exhibit 5** (Phillips Depo. 139:1-7).  If there had been
5   any question about safety, Carson City would not have continued to book the same trip.
6   **Exhibit 5** (Phillips Depo. 139:24-140:5).  Of particular importance, there was no
7   understanding or agreement between Kamp Carson and the GDWCC that somehow the
8   security personnel were responsible for supervising or taking control of the children. **Exhibit 5**
9   (Phillips Depo. 144:2-4).
10       Mr. Phillips, after watching the surveillance video provided by Jacobs Entertainment,
11  concluded that the "poor control" of the group was "a failure of [Kamp Carson] staff." **Exhibit**
12  **5** (Phillips Depo. 74:17-25; 111:5-13).  That reality exonerates Jacobs of foreseeable conduct
13  and claims for breach of a duty.

### C. Security made its normal rounds, but did not observe any improper conduct.

16      The security policy in place at the time of this incident recommended that security
17  personnel make regular checks on the bowling alley at least three times an hour by walking
18  through the lane area, restrooms, lounge, and various other locations. **Exhibit 7**.  Any security
19  personnel who saw anything were directed to report suspicious activity to their supervisor.
20  **Exhibit 7**. The undisputed evidence is that security personnel *did* make their regular and
21  timely checks on the bowling alley, but simply did not see anything. **Exhibit 8 & 9**.
22      The two security personnel on duty and set to patrol this area of the property on July
23  21, 2016, were David Anderson and his supervisor Curtis Gowin. **Exhibit 10** (Quell Depo.
24  75:3-11).  The video surveillance shows both men walking through the bowling alley, along
25  with various other bowling alley employees. **Exhibit 10** (Quell Depo. 75:19-23).  Mr.
26  Anderson is seen on the east camera (in a fixed location at the entrance and pointed at the
27  lanes) and on the west camera (near the restrooms) twice. **Exhibit 10** (Quell Depo. 75:19-
28  76:9).  Mr. Gowin is seen twice on the west camera (also a fixed location near the restroom)

going into and out of the restrooms. **Exhibit 10** (Quell Depo. 76:16-20).  In addition to the security personnel, various other employees were walking around in the bowling alley at various points, either cleaning or helping customers. **Exhibit 9**.  Not only does GDWCC security appear on the West camera six times within the two-hour time frame at issue, but uniformed Carson City Sheriff's Department members appear on three occasions. **Exhibit 9**.  Unfortunately, no one – including Kamp Carson staff and the Carson City Sheriff's personal – noticed K.H.'s conduct.

There is a reason no one noticed K.H.'s conduct: he engaged in both an extremely bold and secretive act of sexual abuse.  Confoundingly, while K.H. sexually abused the child in a public setting, he did so in a secret manner.  The video shows him (1) keeping a look out for adults; (2) using table covers to hide his hands; and (3) using angles to avoid detection.   There is no evidence that any employee of Jacobs Entertainment saw K.H. abusing Plaintiff and simply ignored it.  K.H.'s conduct was not a foreseeable incident, so there was also no reason they *should* have been on the lookout for this conduct.  Hence, Jacobs' request for summary judgment is warranted and proper.

> **D.  There was no reason to provide real-time monitoring of the video surveillance.**

Plaintiff's mother somehow faults Jacobs Entertainment, because she thinks that someone should have been watching the video of the bowling alley while it happened, noticed K.H.'s conduct, and stopped it. **Exhibit 6** (Grace Doe Depo. 127:2-14).  The fact it was caught on camera does not create liability.  There was no policy in place that required Jacobs Entertainment to monitor the surveillance video in the non-gaming bowling alley on a real-time basis. **Exhibit 10** (Quell 39:15-7); **Exhibit 11**.  The video would only be monitored if there was reason, such as a troublesome guest or an ongoing emergency. **Exhibit 10** (Quell 40:19-24).  Due to K.H.'s surreptitious conduct, no one—not even the staff from Kamp Carson—noticed anything.  The surveillance report from that day did not list any incidents. **Exhibit 12**.  The security report also did not mention anything about any incidents in the bowling alley that would have created a reason to do real-time monitoring. **Exhibit 8**.

9

## IV.     DISCUSSION

Plaintiff's sole claim against Jacobs Entertainment is for negligence under state law. To prevail on a negligence theory in Nevada, a plaintiff generally must show that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) plaintiff suffered damages. *Estate of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. 855, 858, 265 P.3d 688, 690 (2011). This motion addresses only the first element. Plaintiff cannot show that Jacobs Entertainment owed her a duty of care to protect her from the criminal conduct of K.H., as it was unforeseeable.

### A. Jacobs Entertainment had no duty to protect Plaintiff from K.H.'s unforeseeable criminal conduct.

"In Nevada, a proprietor owes an invitee a duty to use reasonable care to keep the premises in a reasonably safe condition for use." *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1101, 864 P.2d 796, 799 (1993). "However, 'the proprietor's duty to protect an invited guest from injury caused by a third person is circumscribed by the reasonable foreseeability of the third person's actions and the injuries resulting from the condition or circumstances which facilitated the harm.'" *Id.* (quoting *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 203, 678 P.2d 683, 684 (1984)). Nevada has adopted the **Restatement (Second) of Torts** approach, which provides,

> "Since the possessor is not an insurer of the visitor's safety, ***he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur***. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. ***If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it,*** and to provide a reasonably sufficient number of servants to afford a reasonable protection."

*Id.* (quoting Restatement (Second) of Torts § 344 cmt. f (1977)) (emphasis added).

10

The Nevada Legislature further clarified this inquiry with respect to innkeepers, such as Jacobs Entertainment[2], by enacting **NRS 651.015**. "NRS 651.015(2)(a) states that innkeepers owe a duty of care for on-premises injuries caused by third parties when 'the wrongful act which caused the death or injury was foreseeable." *Humphries v. New York-New York Hotel & Casino*, 133 Nev. 607, 609, 403 P.3d 358, 360-61 (2017) (quoting **NRS 651.015(2)(a)**). "The Court shall determine as a matter of law whether the wrongful act referred to in NRS 651.015(2)(a) was foreseeable." *Id.* (quoting NRS 651.015(2). "If the injury is unforeseeable, then the innkeeper owes no duty, and the district court has not occasion to consider the remaining elements of plaintiffs cause of action." *Id.* (quoting *Estate of Smith*, 127 Nev. at 859, 265 P.3d at 691).

For the purposes of determining foreseeability in the context of a proprietor's duty of care, it is clear that a "totality of the circumstances" approach applies. *See, e.g.* ***Symeonidis v. AMC, LLC***, No. 71072, 2017 WL 6513640, at *1 (Nev. App. Dec. 11, 2017); ***Humphries***, 403 P.3d at 609, 403 P.3d at 360. Nevada courts have generally looked to **NRS 651.015(3)** which provides that an incident is "foreseeable" if either of the following two conditions exist (a) the owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or (b) prior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice of knowledge of those incidents. ***Humphries***, 403 P.3d at 609, 403 P.3d at 360

Because **NRS 651.015** does not provide any guidance as to which acts should be considered "similar" in the context of foreseeability, the Nevada Supreme Court in *Estate of Smith* looked to the legislative history of **NRS 651.015**, in which several commentators noted that the phrase prior incidents of "similar wrongful acts" could be interpreted in different ways, to which the drafts of the provision responded that such ambiguity was deliberate:

> When we crafted this language we used the term "similar" for purposes associated with its common usage. That is, letting the judge decide whether in fact the particular wrongful act was similar to another wrongful act... The phrase we used was chosen very specifically to allow the judge

---

[2] The GDWCCC, in addition to having a bowling alley and casino, is also a hotel. **Exhibit 10** (Quell Depo. 42:13-16).

11

> to have some leeway to make the determination as to whether they were alike and that is the way the bill was drafted.

*Estate of Smith*, 127 Nev. at 861 (quoting Hearing on S.B. 474 Before the Assembly Judiciary Comm., 68th Leg. (Nev., June 10, 1995)). The legislative history also documented several hypothetical situations that implicitly recognize the distinction between events occurring in the inner versus the outer areas of a casino, as well as the context in different levels of violence. *Id*. (noting the dissimilarities between an armed robbery in a casino elevator as compared to a car burglary in the parking lot).

In *Humphries*, the Nevada Supreme Court confirmed that, among the factors to consider, were (1) the location of the incident, (2) the level of violence, and (3) security concerns implicated between the wrongful act in the lawsuit and any prior wrongful acts on the premises. *Humphries*, 133 Nev. at 612, 403 P.3d at 362.

### 1. The Location

Plaintiff fails to demonstrate liability based on the location element, based on history and the nature of the offense committed. For the purposes of determining location, the court does not look to the *exact* location, but instead the generalized areas of the property (*i.e.*, inside vs. outside, casino floor, parking lot, nightclub, etc.). *Humphries*, 133 Nev. at 612, 403 P.3d at 363; *Estate of Smith*, 127 Nev. at 862, 265 P.3d at 693. "A similar occurrence requires only general likeness, not factual conformity." *Humphries*, 133 Nev. at 612, 403 P.3d at 363 (citing Black's Law Dictionary (6th ed. 1990)). The Court will also look to things such as the character and nature of both the perpetrator and the victim in determining whether prior incidents in that location were "similar", *i.e*., whether the individuals were both patrons or it involved non-patrons *near* the property. *Id. See also, Lee v. Caesars Entm't Corp*., No. 317CV00430MMDCBC, 2018 WL 6591798, at *4-5 (D. Nev. Dec. 14, 2018) (To establish that a stabbing attack in a casino bathroom was foreseeable, the Plaintiff has to present evidence of other stabbings in the same or other bathrooms in the Casino that occurred on the premises.)

/ / /

In this case, there are four factors the court must consider in its determination with respect to whether a prior incident is "similar" for the purposes of foreseeability. First, the age of the victims or person involved. A crime involving a child (separate from the distinction of a child sexual abuse crime discussed as it pertains to the "level of violence") is very different from a crime involving an adult. Here, both the victim and the perpetrator were underage. The undisputed evidence is there are no prior incidents of crimes involving children at the GDWCC generally, or more appropriately, in the bowling center. The only incident that even comes close is the lost child who was in the parking lot and whose mother got into an altercation with another adult when that adult tried to help the child. This is highly distinguishable from the present case.

Second, the Nevada Supreme Court has clearly articulated in both *Estate of Smith* and *Humphries*, that the sub-location on a large property, such as a casino, is important. Here, the abuse occurred in the bowling area of the property. Any incidents that happened outside the bowling alley, including in the guest rooms or parking lots, are not sufficiently similar. The nature and character of the sublocations is important, because the Court has acknowledged that the security for a casino floor is much different than the security in a parking lot or out front of the building. *See Estate of Smith*. To further emphasize this point, the Carson City Sheriff's officers who investigated this incident confirmed the highly unusual and unique circumstances in this matter, as sexual abuse incidents always occur behind closed doors, confirming that the Plaintiff cannot establish the location element of this matter.

So too is there a vast difference between the security requirements for a casino floor and the bowling alley. This is especially important with respect to Plaintiff's argument that the security surveillance cameras should have been monitored in real-time. While it may be reasonable to monitor the surveillance cameras on the casino floor (depending on Gaming Commission regulations), there is no requirement under state or federal law to monitor the security cameras in a bowling alley, much less anywhere on this property. The GDWCC has a Category C license with the Nevada Gaming Control Board and thus there is no requirement for real time monitoring. **Exhibit 11**.

Third, the time and place are extremely important. There is a difference in daytime versus nighttime and a public place versus a private room in a hotel and casino. In *Racine v. PHW Las Vegas, LLC*, the court differentiated between crimes in public versus those committed in the hotel rooms. *Racine v. PHW Las Vegas, LLC*, 46 F. Supp. 3d 1028, 1034 (D. Nev. 2014), *aff'd*, 669 F. App'x 845 (9th Cir. 2016). In this case, the vast majority of the crimes against persons (as opposed to property crimes) that occurred at the GDWCC were domestic violence and took place within the hotel rooms or in the parking lot, or were at night. Both the law enforcement officers who investigated this crime testified that in their experience, sexual abuse of children occurs behind closed doors, not in public. **Exhibit 1** (Olson Depo. 71:18-24); **Exhibit 4** (Acosta Depo. 75:3-15; 75:23-76:16).

Finally, any attempt to use incidents from *other* locations, such as in other states, different parts of Nevada or even in different places in Carson City, would be impermissible under *Doud*. Plaintiff has disclosed two press reports of violence against children. **Exhibit 13 & 14**. One is from the Los Angeles Times in 1997, and the other is from the Inquirer, also in 1997. **Exhibit 13 & 14.** Neither is similar to the conduct in this case and there is no evidence that anyone from Jacobs Entertainment knew about those crimes.

### 2. Level of Violence

Plaintiff also will fail to establish the level of violence prong of the nexus, because none of the prior incidents that occurred at the GDWCC involved sexual abuse of a child, much less by another minor. The specificity of this crime is important, because the Courts have consistently held that one crime is not like the other. For instance, an assault involving a gun or a knife is different than a fist fight. *See e.g., Estate of Smith*, 127 Nev. at 862, 265 P.3d at 693; *Blanco v. Circus Circus Casinos, Inc*., No. 2:10-CV-02198-RLH, 2012 WL 1900942, at *3 (D. Nev. May 24, 2012). Courts have also differentiated between domestic violence and stranger violence. *See Kawamura v. Boyd Gaming Corp.*, No. 2:13-CV-00203-JCM, 2014 WL 3953179, at *5 (D. Nev. Aug. 13, 2014). Violent crime versus property crime is also an important distinction. *See Vincent v. Four Queens, LLC*, No. 2:14-CV-01073, 2016 WL 1355036, at *3 (D. Nev. Apr. 4, 2016).

There is no evidence of any sexual assaults occurring at the GDWCC. There is also no evidence of any violent crimes involving children. Both law enforcement officers who investigated this crime testified that it was unique in nature and not something they had investigated before.

### 3.  Security Concerns

Plaintiff also fails to meet the test to the extent it raises security concerns. July 21, 2016, was a Thursday. The camp program attended the bowling center between 1:00 p.m. and 3:00 p.m. To wit:

1. The bar in the bowling center does not open until 3:00 p.m., so nobody was consuming alcohol during the time the campers were present.

2. The campers had been coming to the bowling center for approximately 8 years, multiple times each summer, without any type of incident. **Exhibit 5** (Phillips Depo. 139:1-7; 139:24-140:5).

3. The campers were present with three counselors–two employed by Carson City, and one (K.H.), a volunteer.

4. The campers were all wearing purple shirts to identify the group with which they belonged, and their counselors were dressed in yellow shirts. The attire made it easy for GDWCC, including security, to identify which adults belonged in the presence of the children.

5. At no time, either prior to the field trip, nor during, did anyone from Kamp Carson request security assistance, or alert GDWCC that their group would need special attention. Nor did any of the campers ever appear to be in distress or require assistance.

6. The fact the vast majority of other places Kamp Carson went did not have any security is also important, specifically with respect to trips to other bowling alleys that are not based at casinos, because it shows that Kamp Carson did not rely on security as a precondition for taking children to this particular location. **Exhibit 2** (Phillips Depo. 67:25-68:6; 109:4-11; 131:7-132:2; 134:23-135:6; 142:25-143:1).

/ / /

/ / /

Make no mistake – security was absolutely present during the two hours the campers were present at the bowling center. GDWCC security officers are observed six times on the West camera, and twice on the East camera. Moreover, uniformed volunteers from the Carson City Sheriff's Department are seen on three occasions entering the bathrooms by the West camera. Finally, clean team members responsible for checking/cleaning bathrooms were picked three times on each camera. **Exhibit 9**. The *Humphries* analysis surrounding security implications, however, turns on whether *prior events* should lead the property to anticipate an incident or perhaps alter a security plan.

The facts of this case demonstrate an overwhelming lack of any prior incidents of sexual assault or abuse; lack of any incidents involving violence against children; lack of any crimes against persons occurring in the bowling center; and, the known, uneventful, 8-year relationship with the camp program. These undisputed facts clearly support the position that this event was unforeseeable, as defined by NRS 651.015, and that GDWCC owed no duty to Plaintiff under the circumstances at issue. Therefore, based on the facts of this matter combined with the precedent controlling this matter in Nevada, Jacobs Entertainment respectfully submits that the only appropriate determination is that summary judgment is appropriately granted.

## V.   CONCLUSION

For these reasons, Jacobs Entertainment respectfully requests that the court now grant summary judgment in its favor and dismisses Plaintiff's claim for negligence against it, with prejudice.

DATED this 6th day of November 2019.

HALL JAFFE & CLAYTON, LLP

By: */s/ Steven T. Jaffe*
  STEVEN T. JAFFE, ESQ.
  Nevada Bar No. 7035
  MICHELLE R. SCHWARZ, ESQ.
  Nevada Bar No. 5127
  7425 Peak Drive
  Las Vegas, Nevada 89128
Counsel for Defendant,
JACOBS ENTERTAINMENT, INC.

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure 5(b), I hereby certify that I am an employee of HALL JAFFE & CLAYTON, LLP, and on the 6th day of November 2019, I served a true and correct copy of the foregoing **DEFENDANT JACOBS ENTERTAINMENT, INC.'S MOTION FOR SUMMARY JUDGMENT (Fed. R. Civ. P. 56)** electronically via the Court's CM/ECF system to:

| | |
|---|---|
| Andre M. Lagomarsino, Esq.<br>LAGOMARSINO LAW<br>3005 W. Horizon Ridge Pkwy., Suite 241<br>Henderson, NV 89052 | Kent R. Robison, Esq.<br>ROBISON SHARP SULLIVAN BRUST<br>71 Washington Street<br>Reno, NV 89503 |
| *Attorney for Plaintiff Jane Doe* | *Attorney for Defendant Carson City* |

/s/ *Linda P. Daniel*
An Employee of
HALL JAFFE & CLAYTON, LLP